In re TUCKER et al.

TUCKER v. CURTIN.

(Circuit Court of Appeals, First Circuit. October 31, 1906.)

No. 658.

1. JUDGMENT—CONCLUSIVENESS—USE OF TRUST FUNDS BY BANKRUPTS—RIGHT OF BENEFICIARY TO INTERVENE.

A testator directed that a fund should be held in trust, the income to be paid to a granddaughter during her life, and appointed his son and grandson "executors and trustees" under the will. They qualified as executors, but not as trustees, and took possession of the trust property. They were also partners in business, and, as such borrowed from themselves as executors or trustees a portion of the trust property. To secure the loan they attempted to transfer certain property to themselves as trustees, but on their subsequent adjudication as bankrupts such property was taken into possession by their trustee in bankruptcy. To his application to sell the property they objected on behalf of the beneficiary under the will; but their objection was overruled, and a sale ordered, but without prejudice to a new petition for an accounting if the beneficiary, "or those who properly represent her," should be so advised. Such a petition was filed by the bankrupts in her behalf, and was denied, after a hearing on the merits. Subsequently the beneficiary herself filed a petition for leave to intervene, which was denied on the grounds of laches and that the prior adjudication was conclusive. *Held*, that the petitioner, being a minor, was not chargeable with laches, and that the bankrupts, even if considered formal trustees, stood in such peculiar relation to the transactions involved that they were not persons who could "properly represent" her, for which reason she was not concluded by the adjudication on their petition.

2. SAME—POWERS OF COURT—SETTING ASIDE PRIOR ORDERS.

The rule relating to the powers of ordinary judicial tribunals, limiting summary proceedings to the term at which judgment is entered, does not apply to proceedings in bankruptcy, in which the court may, at any time before the close of the proceedings, set aside orders previously made.

Petition to Revise Proceedings of the District Court of the United States for the District of Massachusetts, in Bankruptcy.

For former opinion, see 148 Fed. 929.

Harold Williams, Jr., for petitioner.
Robert K. Dickerman, for trustee.

Before COLT and PUTNAM, Circuit Judges.

PUTNAM, Circuit Judge. This is a petition by Marion E. Tucker, a minor, by her next friend, to revise certain proceedings in bankruptcy of the District Court for the District of Massachusetts, in which Frederick M. Tucker and Tracy H. Tucker had been duly adjudged bankrupts as copartners under the style of F. M. Tucker & Co. Luther P. Tucker, domiciled in the state of New York, the grandfather of the petitioner, Marion E. Tucker, by his will probated in that state, among other things, bequeathed as follows:

"The other one (1) of said one-quarter parts of said residuary estate, I direct my executors to hold, in trust, and invest the same and pay the income thereof over to my granddaughter Marion E. Tucker, during her natural life, and, upon her decease, leaving lawful issue, to pay over the said one one-quarter part to said issue in equal shares; but in case my said granddaughter shall decease, leaving no issue or descendants of issue her surviving, and her father the said Frederick M. Tucker shall survive her, then and in such event I direct that said one one-quarter part be paid over to him the said Frederick M. Tucker; or, in case said Frederick M. Tucker be not living, then to my grandson Tracy H. Tucker; or, if said Tracy H. Tucker also be deceased, to his issue."

It will be noticed that this bequest makes no provision specifically for trustees, but by its terms it leaves this one-fourth part of the residuary estate in the hands of the executors to carry out the purpose of the will in that respect. The will, however, subsequently speaks of trustees as follows:

"As to the portions of my estate provided to be held in trust, I authorize my executors and trustees to retain existing investments made by me prior to my death, so far as the same shall be practicable, unless there shall be such a change in conditions as shall, in the right discretion of my said executors and trustees, make a change of investment desirable."

Also as follows:

"I hereby authorize and empower my said executors and trustees to sell and convey any or all property, real or personal, of which I may die seised or possessed, and upon the sale thereof to execute, acknowledge and deliver all proper instruments of conveyance and transfer, under seal or otherwise, necessary in law for vesting of title in the purchase or purchasers."

Also as follows:

"I hereby nominate and appoint my son Frederick M. Tucker, and my grandson, Tracy H. Tucker, executors and trustees under this my last will and testament; and I direct that neither shall be required to give bonds as executors or trustees hereunder. I hereby direct that the trusts herein created shall be maintained and carried to the completion thereof by my said executors and trustees, or, in case only one of them shall qualify, by the one so qualifying, or, in the event of the death of one of them, by the other surviving, or, in case both of them shall fail to qualify or shall decease, by a successor (either individual or a trust company) duly appointed by a court having jurisdiction."

The executors named, one of whom was the son of the testator and the other one his grandson, are the bankrupts in this proceeding. Neither of them qualified especially as trustee, nor did any other

person. Frederick M. Tucker and Tracy H. Tucker having taken their several oaths as executors on the 11th day of April, 1901, the will was probated by a surrogate in the state of New York on the 12th day of the same April, and letters testamentary issued thereon to them as executors. All that was done with reference to the establishment of any trust, as shown by the record, was as follows:

"The said quarter part so provided to be held by said executors in trust for Marion E. Tucker, who is the daughter of said Frederick M. Tucker, amounted at the outset to about the sum of sixty-two thousand nine hundred fifty dollars, and same consisted of stocks, bonds, promissory notes, securities and cash; said executors never applied for or were appointed trustees under said will, but acted as such under their appointment as executors in the way and manner especially set forth and directed in said will."

For the purposes of this petition, we are bound to assume that the allegations made by the petitioner, Marion E. Tucker, are true. Therefore we assume that specific securities were set apart and earmarked as appertaining to the trust which the will proposed to establish in her interest. We also assume that part of the assets so set apart and earmarked were transferred to the bankrupts as hereinafter set out. Therefore it follows that the petitioner, Marion E. Tucker, has such an equity as a present or expectant beneficiary as entitles her to recognition by the chancellor, and as would give her, therefore, a standing in the courts of chancery, and an analogous standing in these proceedings, unless some specific reason is shown to the contrary by the trustee in bankruptcy. Among such reasons might be the unquestioned qualification of some person or persons to perform the trust under the will, provided such person or persons also stood in such relations to the property in litigation as to fully and unquestionably enable them to protect the interests of the cestui que trust.

There is in the record a petition, to which we will hereinafter again refer, filed by Frederick M. Tucker and Tracy H. Tucker on July 4, 1904, which contained the following allegations:

"On November 18, 1902, said Frederick M., being in need of money, borrowed from the assets of said trust estate so held for Marion E. Tucker, the following property, to wit: 50 shares of the National Elevator stock, 26 shares of American Sugar stock, common, five $1,000 bonds of the Chesapeake & Ohio Railroad, three $1,000 bonds of the Norfolk & Western Railroad, and $5,000 cash, all of the value of about ———; that a portion of said property was delivered to him on that day, and the remainder on November 19, 1902, or soon thereafter; that on said November 18th said Frederick M., being then the owner and holder of a seat in the Boston Stock Exchange, so called, located in said Boston, assigned and conveyed to the said Frederick M. and said Tracy H. Tucker, in their capacity as trustees for said Marion E., said seat, together with all membership rights in the said stock exchange going with or belonging to said seat, a copy of said conveyance and assignment being hereto annexed, marked 'A'; that said conveyance was in fact made and delivered as security for the due return of all said property on demand or repayment of its value to said trustees; that said Frederick M., on receiving said property, transferred it to said firm of F. M. Tucker & Co., which firm used it in its business as stockbrokers, and no part of same has ever been returned or any portion repaid, but same is all still due and owing to said trustees and trust estate held for said Marion E."

It is also claimed, as appears by the record before us, that afterwards, fearing that the seat in the Boston Stock Exchange would not

prove to be sufficient security, the bankrupts undertook to add thereto $55,000 of the bonds of the Quincy Granite Quarries Company. These assets, including both the Boston Stock Exchange seat and the bonds of the Quincy Granite Quarries Company, were, in the eyes of the law, in the possession and use of the bankrupts when the petition in bankruptcy was filed. There was no outstanding interest, except as security, in the way in which we have described; and this did not affect the legal possession or use until some action had been taken in the way of foreclosing the rights of the pledgors, nothing of which kind had occurred. Nevertheless, on the trustee in bankruptcy applying on September 1, 1903, for an order for the sale of the same, Frederick M. Tucker and Tracy H. Tucker, acting apparently for the interests under the will, objected for reasons which we need not state; and their objections were overruled. The sale was ordered, without prejudice to an accounting with reference to the proceeds thereof.

The terms of this order require particular attention, because they reserve the right to intervene to Marion E. Tucker alone, in the following language:

"But without prejudice to a new petition for a complete accounting, if Marion E. Tucker, or those who properly represent her, are advised to bring one."

At this time, so far as the record is concerned, she was the only person who had any present interest with reference to this bequest in the will of her grandfather, and there was no one living who could claim the estate subject to the trust for her during her natural life; so that, aside from the trustees under the will, if there were any, or, perhaps, the executors, until there were trustees, the only person who could represent this interest was the petitioner, Marion E. Tucker. Therefore we again call attention to the peculiar and appropriate fact that it was the personal intervention of Marion E. Tucker, or of some one who could "properly represent" her, which was protected. Nevertheless, afterwards, on July 7, 1904, Frederick M. Tucker and Tracy H. Tucker filed a petition in the District Court, setting out alleged facts substantially as we have described, and praying for an accounting and payment to the testate estate of the amount due for the securities alleged to have been borrowed from the assets thereof. It was signed by Frederick M. Tucker and Tracy H. Tucker individually, but the opinion of the learned judge of the District Court described it as made by them "as trustees under the Tucker will for the benefit of Marion E. Tucker." It has been assumed all through that the last-named petition was filed by the persons who signed it in some official capacity, and for this hearing it must be accepted as such. It appears that, on a hearing on the merits, it was denied. Subsequently Marion E. Tucker, by prochein ami, filed a petition in the District Court for leave to intervene with reference to the subject-matter of the disposition, in the manner we have described, of the assets of the testator. That petition prayed that the petitioner might be allowed to intervene for the purpose of contesting jurisdiction. It was denied for two reasons; one, that the merits had been determined on

the petition of July 7, 1904. The other related to laches on the part of Marion E. Tucker. Inasmuch as she was an infant, we are unable to perceive how she can be barred by any delay or laches of any kind shown by the record. This is common learning, of which In re Hogton, L. R. 18 Eq. (1874) 573, is a striking illustration. We should add, however, that we understand from the record that the proceeds of the sale, or sales, have not been in any way distributed, and that they are still in the control of the court in bankruptcy.

The petition before us is technically defective, in that it fails to state the facts on which the case turns as we have stated them, except in a merely inferential manner. The proceedings may also be defective, in that the petition of Marion E. Tucker to the District Court for leave to intervene contained no express prayer, except that she might do so for the purpose of contesting the jurisdiction of that court, as to which the law is clearly against the petitioner. In re Union Trust Company, 122 Fed. 937;[1] Mason v. Wolkowich, 150 Fed. 699. Nevertheless the case is submitted to us without objection in the manner we have already stated, raising the issue whether the petitioner Marion E. Tucker was entitled to intervene in the District Court for the purpose of protecting her alleged interest in the proceeds of the securities disposed of by the trustee in bankruptcy; and therefore, notwithstanding the unsatisfactory condition of the record in the particulars we have explained, we accept that issue.

It is not necessary to point out that the petitions to intervene related to alleged immediate and several rights in the fund in question, and that therefore, unlike interventions by bondholders and stockholders who are represented by trustees or by corporations, which interventions may or may not, ordinarily, be permitted according to the sound discretion of the court, the questions of intervention here were questions of strict law. Consequently, the right of somebody to intervene and to be heard on the merits cannot be disputed. The propositions of the learned judge of the District Court involved a finding that Frederick M. Tucker and Tracy H. Tucker, in their representative capacity, properly intervened, and that, there having been a hearing on the merits on their intervention, the topic was foreclosed. On the other hand, it is claimed by Marion E. Tucker that, as these two gentlemen had never qualified as trustees, they had no authority to intervene, and their intervention was ineffectual; so that she, as representing a fixed equitable interest under the will, in the absence of any duly qualified trustee, was entitled to intervene in her own behalf, and in behalf of whomsoever might be interested under the trust to which her desired intervention related. This proposition of law is correct, unless, as found by the District Court, there had already been an effectual intervention on which the rights of the parties had been determined.

In some states it cannot be doubted that, where a duty is imposed on the executors without any clear establishment of a separate trust, the executors perform that duty, either as technical trustees or quasi trustees, without separate qualification; and in other states the law is otherwise. So far as concerns the law of New York, which is peculiarly applicable to this case, decisions of the Court of Appeals are

[1] 59 C. C. A. 461.

cited pro and con as conclusive each way. In view of the contradictory expressions which we quote from the will, first imposing the duty of working out the trust on the executors eo nomine, and afterwards speaking in the same breath of executors and trustees, it may well be doubted whether any of those decisions are strictly in point, and whether the effect of the will in this respect is not a matter of doubt. We do not, however, find it necessary to determine these questions. Neither do we find it necessary to determine whether the rule which admits executors or testamentary trustees into certain federal courts, and particularly certain courts located in the District of Columbia, including the Supreme Court, from whatever jurisdictions such executors or trustees may have received their appointments, enables executors or trustees qualified by a surrogate of the state of New York to intervene effectually in proceedings in bankruptcy in the district of Massachusetts. The circumstances shown by this record are so peculiar that we are not required to enter upon any such general considerations.

The petitioners, Frederick M. Tucker and Tracy H. Tucker, in the petition filed on July 7, 1904, following the order of May 3, 1904, reserving to Marion E. Tucker, or those who could "properly represent her," the right to proceed further, which petition of July 7, 1904, was denied on September 30, 1905, for the reasons given by the learned judge of the District Court already explained, occupied a peculiar position. They were not only the bankrupts, but they were the executors, or trustees, appointed by the surrogate in the state of New York. They were also the loaners and borrowers of the assets in question, and the pledgors and pledgees thereof; and, in addition thereto, they were clearly tort-feasors in equity, if not in law, in availing themselves of the assets of the estate for their own personal benefit. Therefore they were not suitable parties to represent in equity any interests whatever, except to take such action as they might deem proper to relieve themselves from jeopardy. Marion E. Tucker did not unite in that petition, and thus personally avail herself of any rights under the order of May 3, 1904; and, plainly, Frederick M. Tucker and Tracy H. Tucker, in the peculiar position which they occupied, were in no sense persons who could "properly represent her" in the terms of the same order. This is so plain that we must presume that the court proceeded on the petition filed on July 7, 1904, without its attention being called to the anomalous condition of parties in the respects we have spoken of. Of course, it cannot be said that it was the duty of the judge of any court, even of a judge standing in certain respects in the position of one administering equitable rules, and, therefore, analogous to that of a chancellor, to bear in mind that the interests of an infant are involved, which ought to be independently represented by some person in her behalf, or that it is the duty of such a judge, if the matter comes to his mind, to act of his own volition in that direction. Nevertheless there can be no question that, if the attention of the learned judge of the District Court had been called to the situation presented to us, he would have declined to act on the petition of July 7, 1904, until Marion E. Tucker was

properly and independently represented. It seems quite certain that the learned judge who entered the order of May 3, 1904, had in view the necessity of guarding this very point, because the terms of that order are clear and special in that direction. Certainly, however this, may be, the proceedings on the petition of July 7, 1904, were not such as the order of May 3d contemplated; and there has been no intervention in accordance with that order by Marion E. Tucker personally, or by any one who could "properly represent her." Therefore, according to the literal terms of that order, the right reserved to her still existed in full force when the petition of May, 1906, filed as of November 27, 1905, now brought before us, was presented to the District Court.

However this may be, there can be no doubt of our right to grant the petition before us. If, notwithstanding the express reservation in the order of May 3d, the proceedings on the petition of Frederick M. Tucker and Tracy H. Tucker of July 7th were in any way effective, they are at least voidable, thus following the analogy of proceedings in equity, which analogy governs courts in bankruptcy in these particulars; so that the order entered on that petition, if not void, could have been avoided by proceedings analogous to a bill of review, or to an original bill as the case may be, filed by the infant, by her next friend or guardian ad litem, or by the guardian of the domicile. The books are full of learning on this point, so that we need only to refer in this connection to White v. Joyce, 158 U. S. 128, 146–149, 15 Sup. Ct. 788, 39 L. Ed. 921. Indeed, in the present case there was no necessity for any formalities whatever. It must be regarded as well settled that the rule relating to the powers of ordinary judicial tribunals, limiting summary proceedings to the term at which judgment is entered, does not apply to proceedings in bankruptcy. In re Worcester County, 102 Fed. 808, 811, 42 C. C. A. 637, decided by us on April 20, 1900; In re Ives, 113 Fed. 911, 913, 51 C. C. A. 541, decided by the Circuit Court of Appeals for the Sixth Circuit on February 10, 1902. Consequently the proceedings on the petition of July 7, 1904, could have been set aside summarily by the District Court on a petition therefor within such a reasonable time that the petitioner could not be, or should not be, charged with laches. We have said that no laches exists here.

Whatever might be our relations to an appeal in the proper sense of the expression, we sit on a petition for review as a court of bankruptcy. Therefore, on this petition, so far as necessary to give full effect to it, we have all the powers of the District Court. Consequently we ought to give complete relief, and therefore we ought to set aside the order of September 30, 1905, which denied the petition of July 7, 1904, vacate the proceedings in reference to that petition, and direct that it be dismissed without prejudice; and we ought further to permit Marion E. Tucker, or some person who "properly represents her," in view of her infancy, to intervene in accordance with the order of May 3, 1904, and as asked for in the petition now before us.

Let there be a decree vacating the order of September 30, 1905, and directing that the petition filed on July 7, 1904, be dismissed with-

out prejudice, and further directing that Marion E. Tucker, or some suitable person who can properly represent her, or properly represent her interests under the will of her grandfather, Luther P. Tucker, be permitted to intervene and establish her (or their) claims, if any there be, in accordance with our opinion passed down this day.