HATCH v. CURTIN. In re TUCKER et al. Ex parte CURTIN.

(Circuit Court of Appeals, First Circuit. July 2, 1907.)

No. 677.

**1. BANKRUPTCY—PROCEEDINGS—METHOD OF REVIEW.**

This appeal relates to the title of certain assets claimed by the trustees in bankruptcy of Frederick M. Tucker & Co. to belong to the bankrupt estate, but which the appellant claims belongs to a testamentary trust. The proceedings were commenced by the trustees in bankruptcy by a petition in the District Court. There the appellant resisted the petition, among other reasons, because, as he claimed, the District Court had no jurisdiction over the controversy. The District Court decided against him, and he thereupon appealed to us. In this court the parties mutually agreed to waive all questions of jurisdiction. *Held*, that the waiver was sufficiently retroactive in its effect to enable us to take jurisdiction of the merits of the case on appeal.

**2. SAME—TRUST FUND—ADMINISTRATION.**

The partners of the bankrupt partnership of F. M. Tucker & Co. were formerly testamentary trustees of the same trust, which the appellant now represents as their successor. While such trustees, they borrowed from the trust, and earmarked certain stocks of their own as collateral

securing repayment. F. M. Tucker & Co. failed and had made an assignment under the state law for the benefit of their creditors, and thereafterwards they went through the form of canceling the indebtedness, and of taking the collateral securities as the absolute property of the trust. They still later disposed of a portion of the collateral, leaving a residue, which residue constitutes the assets in controversy here. The trustee in bankruptcy claims, first, that the transaction by which the loan was attempted to be discharged and the collateral securities taken as the absolute property of the testamentary trust was void; and, second, that as F. M. Tucker & Co. disposed of certain of the securities after the attempted cancellation of the indebtedness, and as the securities thus disposed of were more than equal to the indebtedness, the proceeds thereof should be held, as between the present parties, to have discharged the indebtedness. *Held* that, under the circumstances, the transaction which involved the attempted cancellation of the indebtedness was not only void, but that it was void for all purposes; and, further, *held*, that inasmuch, as between the members of the bankrupt copartnership and the testamentary trust, both the status of the indebtedness and of the collateral securities now in controversy remained in law unchanged until the time of the bankruptcy, and inasmuch, also, as the equities remain precisely the same as they would have been between F. M. Tucker & Co. and the testamentary trust if there had been no bankruptcy, the securities in controversy must be administered for the benefit of the testamentary trust.

Appeal from the District Court of the United States for the District of Massachusetts.

Harold Williams, Jr., for appellant.

Robert K. Dickerman, for appellee.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. This is in the line of the events described in our opinion in Marion E. Tucker, petitioner, passed down on October 31, 1906, and reported 153 Fed. 91. In that opinion we pointed out that Luther P. Tucker, deceased, domiciled in the state of New York at the time of his decease, grandfather of Marion E. Tucker, by his will, duly probated and allowed in New York, gave to Frederick M. Tucker and Tracy H. Tucker as trustees a certain fund, to be invested by them as trustees, the income thereof to be paid over to said Marion E. Tucker during her natural life. The persons thus named as trustees were also made executors of the will, and were duly qualified as such executors by the proper Surrogate's Court of the state of New York. The persons thus named as trustees, Frederick M. Tucker and Tracy H. Tucker, were transacting a brokerage business by the name of Frederick M. Tucker & Co., and on an involuntary petition, filed in the District Court for the District of Massachusetts on July 6, 1903, were duly adjudged bankrupts, both as copartners and as individuals. We showed in Marion E. Tucker, petitioner, that the question was made whether Frederick M. Tucker and Tracy H. Tucker had ever been duly qualified as trustees under the will. Nevertheless, we also showed that they had received into their hands the legacy given by the will, and assumed to act as trustees therefor, and that the assets arising therefrom were at one time duly earmarked as trust assets. Consequently, we showed that, according to the general rules of equity, which allow no trust to fail merely for the want of trustees,

the legacy thus received constituted a true trust, and was to be administered in equity accordingly; so that, whether or not the persons named as trustees were duly qualified as such, so far as this litigation is concerned, was of no substantial importance.

The origin of this appeal is very well shown by the certificate of the referee to the learned judge of the District Court, as follows:

"The bankrupts, as trustees under the will of Luther P. Tucker for the benefit of Marion E. Tucker, had at the date of their bankruptcy a note of the firm of F. M. Tucker & Co. for $5,000, which they had taken for moneys of the trust estate loaned to the firm by themselves as trustees. This note was originally secured by certain stocks, the greater part of which were sold by them before the bankruptcy, and other stocks were substituted for them, some of which were sold after the bankruptcy to an amount which I found sufficient to pay the note, which I accordingly found had been paid. There thus remained in the hands of the bankrupts some of the original securities and some of those which had been substituted, and I ordered that these be delivered to the trustee in bankruptcy, all of which will more fully appear from the decree and findings, which, with the evidence taken at the hearings at which the title to these stocks was in issue, are herewith transmitted. This order was made upon a hearing on a petition by the trustee in bankruptcy, asking that an order be entered that the securities in the hands of the bankrupts be delivered to him; counsel for the present trustee under the will not waiving any right to object to the jurisdiction of the court in any respect."

The person described as the "present trustee" in the certificate is Hatch, the petitioner, now the appellant, who has been duly qualified as trustee in lieu of the trustees named in the will, who, since our determination of Marion E. Tucker, petitioner, already referred to, have withdrawn themselves from the trust. The record shows, as stated by the referee, that the stocks in question were claimed to have been, throughout all the proceedings, in the hands of Frederick M. Tucker and Tracy H. Tucker, assuming to hold them in the trust capacity which we have described, though since the proceedings in the District Court now appealed from they have been held for whom it might concern in the hands of a gentleman who was acting as their counsel.

The District Court confirmed the order of the referee, finding that the trust had no interest in the securities, and it directed them to be delivered to Curtin, the trustee in bankruptcy of the copartnership, and the appellee herein. It was claimed by Hatch, as trustee, in the District Court, that the securities still belong to the trust, and that they were not in the possession of the trustee in bankruptcy, and that, being held adversely, the District Court had no jurisdiction to make the order which was made in reference to that possession. He also, of course, claimed that the entire merits of the case were with him, as representing his trust. No proceeding in the nature of a petition for revision has been filed in this court, but, as appears in the title of the case, it has come to us on appeal in the strict sense of the term. If both of these positions had been insisted on before us, First National Bank v. Chicago Title and Trust Company, 198 U. S. 280, 25 Sup. Ct. 693, 49 L. Ed. 1051, would apply, and we could not take jurisdiction over the matter on an appeal; but the proposition that the District Court had no jurisdiction by a summary proceeding over

the assets involved is waived, and all the parties hereto have agreed that we should dispose of their rights on the merits. Consequently, the rule which was for the last. time, and thoroughly, explained in Wolkowich v. Mason, by our opinion passed down on October 9, 1906, and reported ·in (C. C. A.) 150 Fed. 699, 701, and sequence, applies, and we can proceed to dispose fully of this branch of the litigation.

The first question, of course, is whether the $5,000, or any other sum was advanced from moneys appertaining to the trust named in the will of Luther P. Tucker, and was taken for the personal use of the bankrupt copartnership of F. M. Tucker & Co., and stocks set aside and otherwise earmarked as collateral. On this point we have no doubt. If funds which were earmarked as belonging to a trust were thus appropriated, it is unimportant, so far as this case is concerned, what was the form of the appropriation. The account books of Frederick M. Tucker and Tracy H. Tucker as trustees were not produced, and, indeed, the record suggests that they kept no proper accounts in reference to the trust. Frederick M. Tucker testified that, prior to April, 1903, there was a fund in the. Massachusetts Loan & Trust Company earmarked as belonging to this trust, and which in fact did belong to it. This is not contradicted, although the record does not show the origin of this fund, and the testimony taken discloses no effort to show it. We are not permitted by the record to find otherwise than that the moneys were so deposited in trust. Also, we are not permitted by the record to find otherwise than that $5,000 of this fund was on April 18th transferred to the use of the bankrupt copartnership of F. M. Tucker & Co., and was in fact used for their benefit. Frederick M. Tucker testified positively to that fact, and also testified that a note was given therefor, dated April 18th and made payable to George H. Nolte, carrying collateral, and indorsed in blank by George H. Nolte, and that this note and the collateral were turned over to the trustees under the will, and deposited in a box in the State Street Safe Deposit Vaults at Boston. Tucker testified, also, that this transaction was entered on the journal of the copartnership, under the date named (April 18th), and that there was at the same time an entry in detail of the collateral given therefor. The trustee in bankruptcy could easily have contradicted this evidence if not true, but he did not do it. One Kimball, who was formerly a bookkeeper for the bankrupt copartnership, testified to cotemporary entries on its cashbook, showing a cash receipt of $5,000, and a remittance of the same to New York on the firm's account, and also a proper debit entry to "bills payable" of the note which we have described, as also carrying interest at 6 per cent. Notwithstanding some confusion in the testimony, which is not of an extraordinary character, these facts positively appear, and we are not justified in disregarding them; so that we find that $5,000 was withdrawn from the trust fund for the benefit of the bankrupt copartnership, and collateral deposited therefor, as maintained by the appellant.

Next comes the question whether any part of the loan has been paid. Apparently a few dollars have been paid on it in some way which the record does not disclose, and which, in view of the judgment which we will enter, it is not necessary for us to trouble our-

selves about. Excepting these few dollars, no payment has been made on the loan, unless by what is claimed by the trustee in bankruptcy or by the bankrupts to have operated as such, as we will describe.

The collateral was changed from time to time, the old collateral being taken out and new collateral substituted, as might be expected in connection with the business of F. M. Tucker & Co. as brokers; that being the usual method of dealing between brokers borrowing on collateral and the holders of the collateral, because brokers are all the time changing their assets in the usual course of business. We therefore attach no importance to these changes in the collateral; neither do we understand that anybody attempts to regard them as of any special account. Matters so continued until the 1st day of July, 1903, when Frederick M. Tucker told Kimball, the bookkeeper already named, to mark the note as paid, and that the collateral would be held and taken in payment for the note, and Kimball made an entry that day on the "bills payable" book as follows: "Paid on loan $4,677.50." This entry related to the $5,000 note which we have described. Meanwhile, between April 18th and July 1st, F. M. Tucker & Co. had failed, and had made a voluntary assignment for the benefit of their creditors, which stood unrevoked until the petition in bankruptcy was filed against them. The $5,000 note provided that the collateral might at any time be sold at public or private sale, and the proceeds applied to the payment of the debt; but this, of course, under ordinary circumstances, would not permit the creditor of his own motion to transfer the collateral to himself as his own absolute property by a mere stroke of the pen. In the present instance this might have been permissible except for special circumstances, because F. M. Tucker & Co. on the one side, and Frederick M. Tucker and Tracy H. Tucker as trustees on the other, might be said to have been the masters of the whole situation; but, the voluntary assignment having intervened, the rights and powers of F. M. Tucker & Co. were suspended, and, moreover, as they were then insolvent and on the verge of bankruptcy, this transaction must be regarded in fraud of the statute. Therefore, under the circumstances, we are compelled to regard it as void. The trustee in bankruptcy, however, occupies the singular position of holding that it was void so far as he was concerned, but that it had some effect prejudicial to the petitioner, appellant, or to the beneficiary whom he represents. On the other hand, the transaction must be regarded as void from the standpoint of either of them, and wholly ineffectual.

To a considerable extent the collateral for the $5,000 note has been sold. The record, however, shows that the proceeds of these sales went to the benefit of F. M. Tucker & Co., and none to the benefit of the trust under the will. The collateral now remaining is apparently the same as was on hand when the petition in bankruptcy was filed, so that, as none of it has been disposed of since the bankruptcy proceedings were commenced, and as there is no suggestion in the record of anything in the nature of a preference in violation of the statutes in bankruptcy, the present status is to be determined according to the condition of things at the time the involuntary petition was filed; in other words, the equities involved are those which exist as

between the petitioner, appellant, or Marion E. Tucker or the trust, on the one hand, and F. M. Tucker & Co. as individuals and co-partners, on the other. It is the general rule in bankruptcy, as we have several times pointed out, that an estate in bankruptcy has no greater equities than the bankrupts themselves, unless there has been a preference or some other act which was a fraud on the statute. In re Chase, 124 Fed. 753, 755, 59 C. C. A. 629. Nothing of this character existing, and what was received from the collateral which was disposed of having gone to the benefit of F. M. Tucker & Co., and the transaction of July 1, 1903, being entirely void, no part of the proceeds is to be regarded as having been applied for the bene-fit of the trust; and the note, except so far as it has been apparent-ly reduced by the minor amount, which is not explained, and the collateral now remaining, are the property of the trust and of the petitioner, representing the trust. Indeed, in this respect the condi-tion, except as we have previously stated, is precisely the same as though there had been no proceedings in bankruptcy, and as though F. M. Tucker & Co. still owed the note.

It is impossible on this record, however, for this court to ascertain whether the collateral remaining is sufficient to liquidate the debt to the trust. Under the circumstances, it is the duty of the District Court in bankruptcy to proceed in the usual way. If there is reason-able ground to apprehend that on an accounting the collateral now remaining and in issue here, if disposed of under proper directions, would liquidate the balance due on the note, with interest, less the minor payments to which we have referred, if there have been any such payments, and probably leave a balance for the benefit of the estate in bankruptcy, the District Court in bankruptcy should dispose of the collateral, direct payment of the debt to the appellant, peti-tioner, for the benefit of his trust, as asked by him, and permit the trustee in bankruptcy to retain the surplus. If, however, there is no reasonable ground to apprehend that the estate in bankruptcy can de-rive any advantage from such a course of proceedings, the District Court in bankruptcy should direct the delivery of the collateral to the petitioner, appellant, as representing his trust, and permit proof of the debt to the trust as a secured claim, or cause liquidation in some other way which the law permits, or to which the parties, with the approval of the court, agree.

The decree of the District Court is reversed, and the case is re-manded to that court for further proceedings in accordance with our opinion passed down this day, and the appellant recovers his costs of appeal against the appellee as trustee.