GEORGE W. DIXON, Respondent, v. JACKSON EXCHANGE BANK, Appellant.

St. Louis Court of Appeals, June 14, 1910.

1. REFERENCE: Long Account. An action involving an examination of a long account between the parties is an action for compulsory reference.

2. PRINCIPAL AND AGENT: Authority of Agent: Agent Held Not to be General Agent. Where the president of a bank was the agent of a person to collect notes, with authority to make certain specific payments for the principal out of the funds so collected, he was not a general agent, and had no right to treat as his own the money collected and deposited in the bank in the principal's name, nor to make such representations to the cashier of the bank as to induce him to pay checks out of the principal's account, as he (the president) saw fit.

3. BANKS AND BANKING: Relation of Depositor. Where the president of a bank, employed as the agent of a third person

to collect notes due him, collected the notes and deposited the proceeds in the bank to the third person's credit, and notified the third person thereof, and the third person replied that he would let it remain in the bank until it could be lent out, the relation of debtor and creditor existed between the bank and the third person.

4. ———: ———: **Liability of Bank: Estoppel of Depositor.** In such a case, the fact that during the period the agent was making use of the depositor's name, the latter did not ask the bank for a statement of account or what his balance was would not estop him from suing the bank for the amount deposited to his credit, no passbook having been given him and no stated account in which he acquiesced ever having been rendered him.

5. ———:———:———: **Unauthorized Payment of Checks.** In such a case, where the cashier of the bank paid checks drawn in the name of the agent (who was president of the bank) and of a company with which said agent was connected, without reason to believe the payments were for the benefit of the depositor, and when well aware they were not, there was a misappropriation of the depositor's funds by the bank, and it was liable therefor in an action by the depositor.

Appeal from Cape Girardeau Circuit Court.—*Hon. Henry C. Riley*, Judge.

AFFIRMED.

*John A. Snider* and *Oliver & Oliver* for appellant.

(1) The appellant had the right to have the trial court review the findings of fact in the light of the evidence adduced and to insist that the judgment should be in its favor on a proper finding of the facts. Berry v. Rood, 209 Mo. 662. (2) The constant practice in cases of this character is to first ask the trial court to review the findings of the referee, and correct them, where the evidence shows the findings are erroneous. And the trial court's action on the referee's report may be reviewed and corrected by the appellate court. Caruth-Byrnes Co. v. Wolter, 91 Mo. 484; Ely v. Ownby, 59 Mo. 437; O'Neil v. Capelle, 62 Mo. 208; Smith v. Paris, 70 Mo. 615. (3) "Where the principal consti-

tutes. the agent his representative, in the transaction of certain business; whatever therefore the agent does, in the lawful prosecution of that business, is the act of the principal." Hampton v. Pullman, 42 Mo. App. 134; Ruggles v. Washington Co., 3 Mo. 496; Debaun v. Atchinson, 14 Mo. 543; Stothard v. Aull & Morehead, 7 Mo. 318. (4) The relation of debtor and creditor between this respondent and appellant never existed. The respondent had no passbook from the appellant, had no deposit slip or other evidence of indebtedness in writing. He never drew a check on the bank at any time. He never gave authority for his agent English to deposit the money in the bank, and his letters clearly show that he had reason to believe and did believe that his agent was in personal charge and had the custody of his moneys, and he never at any time looked to appellant bank as its custodian. Not a scratch of the pen was ever sent by the bank to him showing any indebtedness until after the new bookkeeper had been installed and he discovered that English had been using a page in the bank's books to keep his (English's) account with the respondent Dixon. Quattrochi Bros. v. Bank, 89 Mo. App. 500; Sidway v. Land Co., 187 Mo. 649; Trippensee v. Braun, 104 Mo. App. 628.

T. D. Hines and Benson C. Hardesty for respondent.

(1) The relation of debtor and creditor between appellant and respondent was firmly established by the proof, and the finding of the referee on this proposition was correct. Anderson v. Kissom, 35 Fed. Rep. 708; Quattrochi Bros. v. Bank, 89 Mo. App. 5. (2) Appellant is presumed to have ascertained the extent of the written authority, and it was charged with the legal responsibility of determining at its peril whether its payment of respondent's debt, to English, under the attending circumstances, was within the limit of that au-

thority, so as to be equivalent to making payment directly to respondent, himself. Bank v. Schaumberg, 38 Mo. 239; Wade on Notice, sec. 664, p. 299; Anderson v. Kissom, 35 Fed. Rep. 699; Investment Co. v. Bank, 96 Mo. App. 125; Hardy v. Bank, 34 Am. Rep. 325; Duckett v. Bank, 39 L. R. A. 84; Bank v. Jones, 18 Tex. 811; 3 Am. and Eng. Ency. Law (2 Ed.), p. 832; Bank v. Walker, 130 U. S. 267, 9 Sup. Ct. Rep. 519; Bodenham v. Hoskins, 21 E. L. & E. 605. (3) The very nature of the transactions by which respondent's fund was dissipated, charged appellant with notice that the debt due respondent was not being paid to him at all; that he was being cheated and defrauded by his agent; that by reason of the adverse character assumed by the agent, the principal stood unrepresented. Bank v. Schaumberg, 38 Mo. 241; Kitchen v. Com. Co., 105 Mo. App. 463; Corder v. O'Neill, 207 Mo. 632; Lee v. Smith, 84 Mo. 304; East Hartford v. Bank, 49 Conn. 539; Cotton Mills v. Orchard Mills, 17 N. E. 496; Bank v. Bank, 56 Fed. Rep. 967; Bank v. Walker, 130 U. S. 267, 9 Sup. Ct. Rep. 519; Story on Agency, secs. 210, 140; Angell on Corp., sec. 30b; Mechem on Agency, sec. 721, 723. (4) The negligence of the directors in surrendering the entire machinery of the bank to English, and failing to maintain any oversight and supervision over the conduct of the institution, was the direct cause of the fraud. The bank having permitted itself to be made the agency of the fraud, must compensate respondent for the loss occasioned thereby. Lowndes v. Bank, 22 L. R. A. (N. S.) 412; Allen v. Railroad, 5 L. R. A. 716; Briggs v. Spaulding, 141 U. S. 132, 35 Law. Ed. 662, 11 Sup. Ct. Rep. 924; Thomp. Neg., sec. 8; Bank v. Bank, 80 N. Y. 162, 36 Am. Rep. 595; Martin v. Webb, 110 U. S. 7, 28 Law. Ed. 49, Sup. Ct. Rep. 428; Bank v. Munger, 36 C. C. A. 659, 95 Fed. Rep. 87; Bank v. New Milford, 36 Conn. 93; Smith v. Anderson, 57 Hun 72; Morse, Banks and Banking, sec. 317. (5) The transactions by which the funds of the bank were used to pay debts or buy claims

against English and his tile company and by which the money thus used was afterwards charged not to the overdrawn accounts of either of them but against respondent's account, were for the direct benefit of the bank; all the transactions complained of were consummated through the agency of English alone; and the appellant, claiming the benefit of those transactions, becomes charged with the attendant knowledge possessed by English. It can obtain no greater rights than if it had done those acts itself, knowing what he knew. Bank v. Schaumberg, 38 Mo. 243; Cotton Mills v. Orchard Mills, 17 N. E. 496; Story on Agency, sec. 140; Purdy's Beach on Corporations, sec. 769; Lowndes v. Bank, 22 L. R. A. (N. S.) 414; Re Carew, 31 Beav. 39; Railroad v. Schuyler, 34 N. Y. ——; Loring v. Brodie, 134 Mass. 453.

GOODE, J.—Action for $823.37, alleged to be money which was received by defendant to the use of plaintiff. The cause was referred to a referee by consent, but it was one for reference without consent, because it involved the examination of a long account between the parties. The referee's report was in favor of a judgment for plaintiff in the sum of $914.78, the amount sued for and interest, and judgment having been entered by the circuit court for said sum, after the argument of exceptions to the referee's report, this appeal was prosecuted from the judgment. Plaintiff was reared in Cape Girardeau county, of which Jackson is the county seat; but more than twenty years ago he removed to Oklahoma, where he has resided ever since. When he left Missouri he entrusted the collection of obligations due him to Eli Abernathy, who acted as agent for plaintiff until December, 1900, when, at Abernathy's request, he was relieved of the agency and Henry R. English was appointed in his stead. Abernathy turned over a few notes to English on which was collected in

the course of time, $1165.40 and deposited by English to the credit of plaintiff in defendant bank, of which English was president and bookkeeper when he was appointed agent for plaintiff, and continued to be until July, 1906. English was authorized by plaintiff to pay out of the money he collected the dues of plaintiff to the Ancient Order of United Workmen, as they matured from month to month, and he also paid some court costs that accrued in collecting the notes. English opened an account in defendant bank in the name of plaintiff, in December, 1900, when he first became agent, and checked on it every month to December, 1903, to pay plaintiff's said dues; and during those years checked twice for court costs, one item of which was a fee of one dollar for recording a transcript, and the other item was seven dollars for court costs. English collected no considerable amount until May, 1901, when six hundred dollars was paid, and thereupon he wrote plaintiff he had placed the money to plaintiff's credit in the bank and the latter answered: "I will leave the money with your bank until I can place it; or if you can loan it for me, let it out." Meanwhile and until December, 1903, English drew no money out of the account except to pay monthly dues in the aforesaid order. December 1, 1903, he began to pay out of plaintiff's money in the bank, items of indebtedness owed by the Jackson Brick & Tile Company, a corporation English was president of and controlled, if he did not entirely own. Between December first and twenty-first, 1903, English paid out in that way over three hundred dollars, according to the statement of account furnished by the bank. Until that time no transaction in the form of a loan to the Tile Company of plaintiff's funds had occurred, but on August 21, 1903, English had written to plaintiff the latter's balance in the bank was $927.44; that English could lend it at eight per cent; if he made the loan would hold himself personally responsible, and the party would want it for one year, with the privilege of longer time.

Plaintiff answered September 7, 1903, to let "the man" have the loan for one year, or longer, and if he did not want it, to try to place the money at once on some terms. December 21, 1903, English executed a note for seven hundred dollars in the name of the Jackson Brick & Tile Company, per H. R. English, president, payable to the order of plaintiff, with eight per cent interest, and indorsed it on the back. No money was turned over to the Tile Company, nor was a check for said sum drawn on plaintiff's account in favor of the Tile Company and credited to the latter on the books of the bank. Plaintiff never was notified of the execution of the note to him, nor that the Tile Company had borrowed money from him, and in fact knew nothing of the transaction, as no report of it was made to him and the note was retained by English. From that date (Dec. 21, 1903) until April 20, 1904, English drew many checks for his individual purposes and for the use of the Tile Company, or to pay debts it owed, and these checks were paid by the bank's officers out of the money on deposit to the credit of Dixon. There were about sixty of these checks, and they appear to have amounted to more than twenty-one hundred dollars. During the same period and up to 1905, English deposited to plaintiff's credit money of his own and of the Tile Company to the amount of over seventeen hundred dollars. Meanwhile he drew checks every month to pay plaintiff's dues to the fraternal order and made a few deposits of plaintiff's own money to the latter's credit. The checks paid out for the benefit of the Tile Company or of English were not signed in plaintiff's name, but in the name of the Tile Company or English. Both English and said company became insolvent and the former ceased to be president and bookkeeper of the bank in July, 1906. In August, 1906, the bookkeeper who succeeded English wrote plaintiff that his account had been drawn on by English, and as plaintiff's letter authorizing this was not on file, the bookkeeper's letter was written to ask con-

firmation of English's authority. Plaintiff replied asking a statement of his account and saying English had been authorized to pay assessments and dues to the Ancient Order of United Workmen, and had said he would try to keep plaintiff's money lent out so as to make interest and pay his assessments. The statement was furnished, no cancelled checks being returned with it, and showed plaintiff's account was overdrawn to the amount of $416.80; whereas plaintiff claimed his balance in the bank was $823.97, or the sum of the amounts of his money deposited to his credit by English, less what had been drawn out to pay dues and the two items of court costs we have mentioned. The referee made an elaborate report and we do not dissent from his findings, but think it is unnecessary to recite them in full. The material facts found were, that English was plaintiff's agent to collect notes and pay assessments to the Ancient Order of United Workmen, as they fell due out of his collections, and for this purpose to withdraw money from plaintiff's account without having checks signed by plaintiff in person; that English collected $1165.40 for plaintiff and deposited the money in the bank and drew on the account for legitimate items to the amount of $342.13; that the note for seven hundred dollars executed by the Jackson Brick & Tile Company to plaintiff remained in the possession of English, never was delivered to plaintiff and the latter had no knowledge of its existence; that after the execution of the note English made deposits to the amount of $901.95 to plaintiff's credit of the money of the Jackson Tile Company. It will be perceived said amount is much less than the seventeen hundred dollars, or more, the account shows was deposited by English to plaintiff's credit, after the execution of the note, to offset his drafts on the account for his own and the Tile Company's use; but some of those deposits were of English's own money.

The main contention on the appeal is that English was general agent of Dixon and might treat the latter's

money as his (English's) own and make such representations to the cashier of the bank to induce him to pay checks out of plaintiff's account as he (English) saw fit. The record will not bear out this view, for the only fair deduction from it is, that English was agent to collect notes due plaintiff and take whatever steps were necessary to that end, including payment of court costs and also to pay his dues to the fraternal order.

It is further contended the relation of debtor and creditor did not exist between plaintiff and the bank; an untenable position, because English was president of the bank and as its bookkeeper wrote plaintiff he had deposited the latter's money to plaintiff's credit in the bank and plaintiff then answered he would let it remain in the bank until it could be lent out.

It seems Dixon was at Jackson on a visit and in the bank some time during the period English was making use of his money, and did not ask the bank for a statement of account or what his balance was. These facts are invoked to estop plaintiff, but the position is so devoid of merit it hardly can be argued. Not an element of estoppel was shown. Plaintiff had no passbook and had never received at any time a stated account in which he had acquiesced. The most that can be said is, he felt confident of the good faith of English and the solvency of the bank, and no suspicion had entered his mind.

As far as the ostensible loan of seven hundred dollars to the Tile Company is concerned, it cuts no figure in the case. It was a sham and really had nothing to do with the payment of money out of plaintiff's account for the use of the Tile Company and of English; for that course of business had been followed before the note was executed and was carried on to an amount greatly in excess of the face of the note afterward. Not only was the party mainly culpable the chief officer of the bank, but the cashier paid checks drawn in the

149 App—38

name of the Tile Company and of English for years with plaintiff's money without reason to believe the payments were for the benefit of plaintiff and when well aware they were not, but for the benefit of said company and English. There was no semblance of authority for such conduct by the bank's officers and nothing can be made of the case except a misappropriation by them, and particularly by English, of plaintiff's money—a conversion of it by the president of the bank. The responsibility of defendant is beyond doubt and the judgment will be affirmed. All concur.