## In re SEE.

(Circuit Court of Appeals, Second Circuit.  November 11, 1913.)

### No. 22.

1. TRUSTS (§ 358*)—FOLLOWING TRUST FUNDS—IDENTIFICATION.

A trust fund can be followed and recovered in equity only when it can be clearly traced and identified as some specific fund or property.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 523, 553; Dec. Dig. § 358.*

Following trust property converted by trustee as dependent on its identification, see note to In re T. A. M'Intyre & Co., 108 C. C. A. 545.]

2. TRUSTS (§ 358*)—FOLLOWING TRUST FUNDS—ASSETS—PREFERRED LIEN.

Claimant and a bankrupt agreed that the former should purchase and sell goods in the bankrupt's name, he to receive 5 per cent. on the gross sales and all money collected by claimant and pay all bills for goods purchased. To protect the bankrupt from loss, claimant deposited $800 with him to be returned on termination of the agreement. This money was deposited by the bankrupt in a bank, and, about a week prior to the bankrupt's failure, the balance of his deposit account amounting to $1,500 was paid to the bank to take up a note owing to it. *Held* that, since claimant's deposit could not be traced into funds of the bankrupt that came into the possession of his trustee, claimant was not entitled to a lien on the bankrupt's assets therefor.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 523, 553; Dec. Dig. § 358.*]

Petition and Appeal from the District Court of the United States for the Southern District of New York.

In the matter of bankruptcy proceedings of J. Albert See. From a decree awarding Henry H. Meeker, a creditor, a lien on the assets of the bankrupt for the payment of money deposited with him as security, Joseph Steinberg, as trustee of the bankrupt, appeals. Reversed.

Frank H. Reuman, of New York City, for appellant.

C. Elmer Spedick, of Brooklyn, N. Y., for respondent.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. In October, 1911, J. Albert See and Henry H. Meeker entered into an agreement which provided that Meeker should be permitted to carry on the business of buying and selling goods in the name of See. The latter was to receive 5 per cent. on the gross sales; was to receive all moneys collected by Meeker and pay all bills for goods purchased by him. In order to protect See from any losses which might occur through the sale of goods by Meeker, the latter deposited the sum of $800 with See as security to be returned on the termination of the agreement. Meeker carried on the business until January 10, 1912, when a petition in involuntary bankruptcy was filed against See, and Joseph Steinberg, the petitioner, was appointed receiver and subsequently trustee in bankruptcy. After the appointment of the petitioner, Meeker collected for goods sold by him certain sums of money amounting approximately to $519. He

was required to show cause why he should not turn this amount over to the receiver. He admitted the collection of this money, but asserted the right to retain that sum on account of having a lien against the same for the $800 which he had deposited with See by way of security. It was admitted that See had deposited the $800 which he received in the Ætna National Bank, and that when the bankruptcy petition was filed there was very little, if anything, in the bank to See's credit, because of the fact that the main balance that had been in the bank was paid to the Ætna National Bank to take up a $1,500 note within a week prior to the failure. An order was made by the district judge requiring the respondent Meeker to pay to the receiver the $519 which he had collected and the question was referred to a special master as to whether the $800 deposited by the respondent Meeker with the bankrupt See was a lien upon such moneys as might be collected on the accounts due under the agreement between them. At the same time the receiver or trustee was directed to set aside out of the assets in his possession the sum of $1,000, the same to be held until it should be determined whether the claimant Meeker had any lien thereon. The master reported against the existence of the lien. The district judge refused to confirm the master's report and ordered that the claim of respondent Meeker should be declared a lien upon the sum of $1,000 in the hands of the trustee, who was directed to pay to Meeker $690.71; it having been ascertained that this was the amount due from See to Meeker. The trustee in bankruptcy has appealed from this order and filed a petition for review.

It is admitted that no part of the $800 has been traced into the funds of the bankrupt or reached the hands of the trustee in bankruptcy. The question which this court has to decide, therefore, is whether one who entrusts money to another to be held as security has a preferred claim on the assets which come into the possession of a trustee in bankruptcy of that other in case the latter wrongfully appropriates the funds held in security to the payment of certain of his creditors, or whether he must come in and share pari passu with the general creditors.

The respondent insists that his claim is to be preferred on the ground that the security fund was wrongfully used by the bankrupt to diminish his debts and that by the payment of the note to the Ætna Bank, the bankrupt's estate was by so much enriched. The argument is that the presumption should be indulged that this wrongful application of the security fund had contributed to the benefit of the bankrupt's estate in the proportion that it had lessened the volume of the general claims against the estate and that on that account the special creditor, in this case the respondent Meeker, is to be given the same preference over the general creditors that he would have had if the security fund had not been wrongfully appropriated but had come into the hands of the trustee in bankruptcy.

On the other hand, the petitioner, the trustee in bankruptcy, insists that as the security fund was dissipated by the bankrupt and never reached the petitioner's hands as a specific fund and cannot be traced into the assets of the bankrupt's estate, the respondent is not entitled to any preference over the general creditors.

[1] There is no doubt that See held the $800 deposited by Meeker as a trust fund. If the fund had remained in its integrity in See's hands—Meeker would have been entitled to claim the entire amount in preference to the general creditors. And if in perversion of his trust See misappropriated the money, Meeker was entitled in equity to pursue the trust fund into any form of property into which it could be shown See had converted it. But if a trustee wrongfully converts a trust fund and it cannot be traced into any specific fund then the question arises whether the cestui que trust can assert a preference against general creditors. It is well known that there is some conflict of authority upon the question whether the trust fund can be followed only when the specific subject-matter can be clearly traced and identified, or whether it will be sufficient if it can be shown that it has found its way into the assets although it cannot be identified in any particular fund or property. The better doctrine and that sustained by the weight of authority is that a trust fund can be followed and recovered in equity only when it can be clearly traced and identified in some specific fund or property. Board of Commissioners v. Strawn, 157 Fed. 49, 84 C. C. A. 553 (see note to same case in 15 L. R. A. [N. S.] 1100); In re Hicks, 170 N. Y. 195, 63 N. E. 276; Bank Commissioners v. Security Co., 70 N. H. 536, 49 Atl. 113; Bryne v. McGrath, 130 Cal. 316, 62 Pac. 559, 80 Am. St. Rep. 127; 39 Cyc. 530.

As said in Hewitt v. Hayes, 205 Mass. 356, 362, 91 N. E. 332, 137 Am. St. Rep. 448, the cestui que trust is not given a charge upon the general estate of the trustee on the ground that that estate has been enriched at his expense, but is merely allowed to hold a charge upon the specific account or fund into which his money has gone, and in which equity can presume that it still remains. In Lowe v. Jones, 192 Mass. 94, 78 N. E. 402, 6 L. R. A. (N. S.) 487, 116 Am. St. Rep. 225, 7 Ann. Cas. 551, it was sought to establish a trust in the general assets of an insolvent estate upon the ground that the proceeds of trust property wrongfully disposed of had gone into those general assets, and thus increased the amount of the estate. But the court said that, while there was some authority for that contention, it had never adopted it and it was not disposed to do so.

In Spokane County v. First National Bank, 16 C. C. A. 81, 68 Fed. 979, a question similar in principle was before the court in the Ninth circuit. That court said:

"We are unable to assent to the proposition that, because a trust fund has been used by the insolvent in the course of his business, the general creditors of the estate are by that amount benefited, and that therefore equitable considerations require that the owner of the trust fund be paid out of the estate to their postponement or exclusion. If the trust fund has been dissipated in the transaction of the business before insolvency, it will be impossible to demonstrate that the estate has been thereby increased or better prepared to meet the demands of creditors, and, even if it is proven that the trust fund has been but recently disbursed, and has been used to pay debts that otherwise would be claims against the estate, there would be manifest inequity in requiring that the money so paid out should be refunded out of the assets, for in so doing the general creditors whose demands remain unpaid are in effect contributing to the payment of the creditors whose demands have been extinguished by the trust fund. Both the settled principles of equity and the

weight of authority sustain the view that the plaintiff's right to establish his trust and recover his fund must depend upon his ability to prove that his property is in its original or a substituted form in the hands of the defendant."

The question was elaborately considered in Metropolitan National Bank of Kansas City, Mo., v. Campbell Commissioner Co., Gregory, Intervener (C. C.) 77 Fed. 705, and a like conclusion was reached.

In an article on Following Misappropriated Property, which appeared in 19 Harvard Law Review 511 (1906), the particular question now under consideration was discussed by the late Prof. Ames. He said:

"In a few jurisdictions the true owner is given a preference over the general creditors of the wrongdoer upon the mere proof that the latter had the benefit of the misappropriated res, even though it is impossible to prove that the fund for distribution among the general creditors is, at the time of the preference allowed, larger than it would have been but for the misappropriation. But the allowance of a preference under such conditions is unjust to the general creditors. If the product of the true owner's res is still traceable in the assets of the wrongdoer, in the form of land, chattels, a bank deposit, or the money of a bank, its surrender to the true owner is eminently just. The creditors are left just where they would be if there had been no misappropriation. If the true owner's res was used in paying one of the creditors, the true owner may fairly claim to be subrogated to that creditor's claim, in which case, also, the dividends of the other creditors would not be affected by the misappropriation. The same result is reached if, without subrogation, the true owner is allowed to prove ratably with the other creditors. But to go further and give the true owner a preference over all the general creditors means an unfair reduction of the dividend of the other creditors. If the true owner's res has been squandered, the dividend of the other creditors must be less because of the right of the true owner to prove his claim. But here, too, it would be gross injustice to pay the true owner in full, and thereby diminish still further the dividend of the general creditors. The authorities are nearly unanimous against this unjust preference."

In Perry on Trusts, vol. 2, note p. 1361 (6th Ed.), it is said that it is well settled that the mere misappropriation of trust funds does not give the beneficial owner any rights against the general estate of the misappropriating trustee in preference to the latter's general creditors. And see Lewin on Trusts (12th Ed.) p. 1155.

[2] In view of the authorities and for the reasons therein given, we are of the opinion that the report of the master recommending that an order be entered denying the claimant Meeker any lien on the $1,000 ordered deposited by the court, should have been confirmed by the district judge. His finding that the claim of Henry H. Meeker for $690.71 was a priority claim and lien on the special fund in the hands of the trustee and his direction that the said trustee pay the said claim out of the said special fund were erroneous, and the order and decree are reversed and the case is remanded to the district judge for further proceedings in accordance with his opinion. The appellant will recover his costs.