### STALCUP v. JEPSON et al.

(Circuit Court of Appeals, Eighth Circuit. May 7, 1923.)

No. 6186.

1. Bankruptcy ⬅️467—Both law and facts reviewable on appeal from order denying discharge.

On appeal from order denying discharge, under Bankruptcy Act, § 25a (Comp. St. § 9609), both the law and the facts are reviewable.

2. Bankruptcy ⬅️414(3)—Evidence held to warrant denying discharge.

Order denying discharge on grounds named in Bankruptcy Act, § 14 (Comp. St. § 9598), *held* supported by evidence.

Appeal from the District Court of the United States for the District of Nebraska; Thomas C. Munger, Judge.

Application by Elmer T. Stalcup, bankrupt, for discharge, opposed by Lawrence P. Jepson and others. From order denying discharge, the bankrupt appeals. Affirmed.

Sterling F. Mutz, of Lincoln, Neb., for appellant.

F. B. Baylor, of Lincoln, Neb. (A. Moore Berry, of Lincoln, Neb., on the brief), for appellees.

Before STONE, LEWIS, and KENYON, Circuit Judges.

LEWIS, Circuit Judge. [1, 2] This appeal is from an order denying discharge to a voluntary bankrupt. His application for discharge and objections thereto by the trustee and creditors went to the referee as special master, who reported the facts and recommended that discharge be denied, and on hearing before the District Judge the order appealed from was entered. The objections set up are those named in Section 14 of the Bankruptcy Act (Comp. St. § 9598), as (1) the bank-

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

rupt had made false oath in the proceedings; (2) he had destroyed, concealed or failed to keep books of account, from which his financial condition might be ascertained, with intent to conceal his financial condition; and (4) that within the four months he had transferred or concealed his property with intent to hinder, delay or defraud his creditors. The order denying discharge is general, but the record contains a brief opinion of the District Judge in which he found that discharge should be denied on the second ground stated. He expressed no opinion as to whether either of the other grounds of objection was sustained by the evidence. It is argued here (a) that the facts do not support the conclusion stated by the District Judge, and (b) that this Court has no right to review and weigh the evidence for the purpose of deciding whether either of the other objections was established; that we are restricted to an inquiry as to whether the reason given by the District Judge is sustained by the proof, and if not there must be reversal. We must reject both contentions. As to the first, we have no doubt that the facts fully support the conclusion of the Court on which the order was entered; and as to the second, the appeal of the bankrupt comes here under section 25a (Comp. St. § 9609), as in equity cases, and the facts and law are both submitted to us for review and decision. Elliott v. Toeppner, 187 U. S. 327, 23 Sup. Ct. 133, 47 L. Ed. 200; Courier-Journal Co. v. Brewing Co., 101 Fed. 699, 41 C. C. A. 614. Of course, discharge must be denied if any one of the three objections be established.

The bankrupt is an intelligent man, thoroughly experienced and capable in business matters. For several years prior to filing his petition in bankruptcy on September 25, 1911, he had been engaged in the mercantile business, in buying and selling stocks of general merchandise, in buying and selling land and in trading those kinds of properties. Less than four months before he was adjudged bankrupt he purchased merchandise to the amount of $1,800 from various wholesale merchants and had it shipped to him at Hebron, Nebraska. He made statements to the representatives of some of the wholesale houses that his stock of merchandise was worth from $15,000 to $20,000, and that he had $6,000 in the bank. He told others that the stock he carried amounted to about $10,000, and that he had about $3,000 in the bank. He told others that he was worth about $40,000. The schedules which he filed with his petition showed that he was indebted more than $26,000, and his total assets were $1,250, which included household goods listed at $50. He put a value of $1,200 on his merchandise. No real estate scheduled. In August he gave a $500 chattel mortgage on the merchandise. He was sued by some of his creditors and judgments rendered against him. He had boxed up some of his stock and shipped it in small quantities to different places for disposal. Attachment suits were brought and levies made on it. Within a year he had had a stock of goods at Holbrook, prior to that at other places, and testified that his wife had an interest in them. She testified that she did not think she ever had an interest in them.

In most of his business transactions within ten years prior to bankruptcy one Palm was interested. He testified that he kept no books

of account at any time. His attention was directed to many deals that he had made, and he was asked to explain what profits he realized, and with rare exceptions he failed to give any information in relation to them. In some of them showing that he had received several. thousand dollars in the transactions, he was unable to state what he had done with the money, except to 'say that he had spent it in various ways. He testified that he entered into an ante-nuptial contract whereby he gave his wife $5,000 in December, 1906, and that in many of the deals which he and Palm made he represented his wife, and that she was worth from $10,000 to $20,000. Among other transactions, he and Palm traded for 640 acres of land in Garfield County, Nebraska. The bankrupt said he sold his interest in that land to his wife for $500. His wife testified that she was not able to say that she had ever been interested in any land in Garfield County; that she may have owned it, but she could not say whether she did or not. He testified that he had lost money in a mining transaction and that his wife bought stock in the mining company and paid cash for it, but that she later traded it. She testified that she never bought any mining stock; never owned any mining stock. She further said that the trades her husband made for her usually turned out very profitable, and that those that he made for himself proved to be unfortunate. In one of the trades he obtained a two-fifths interest in 160 acres of land in Harlan County, Nebraska, which appears to have been deeded to his wife. That and the lands in Garfield County were subject to mortgages.

The trustee brought an action in the United States District Court for the District of Nebraska against Stalcup and his wife and Palm and others to recover these lands and certain town lots. The court found and decreed that the lands and lots belonged to the bankrupt. That decree was entered after the hearing before the master, but before the application for discharge came on for hearing before the District Judge, and it was offered in evidence in the latter hearing. Stalcup had testified that all of these lands recovered by the trustee belonged to his wife.

We think it clear that the proof sustains all three of the objections to discharge, and the order is

Affirmed.