## In re RUSKAY et al.

## Petition of CRELLIN.

(Circuit Court of Appeals, Second Circuit. February 2, 1925.)

No. 132.

**1. Bankruptcy ⬳140(3)—Claimant is entitled to trace and assert right to money given to bankrupts to purchase stock.**

Bankrupts who received money from claimant for purchase of stock for claimant occupied fiduciary relation, entitling claimant to assert his rights against bankrupts or any one claiming under them voluntarily or with notice, if claimant could trace money into specific fund or property.

**2. Trusts ⬳352—Depleted trust funds mingled with other moneys cannot be treated as reappearing in sums subsequently deposited.**

Where one has deposited trust funds in his individual bank account and mingled fund is at any time wholly depleted, trust fund is thereby dissipated and cannot be treated as reappearing in sums subsequently deposited to credit of same account.

**3. Bankruptcy ⬳467 — On appeal, Circuit Court of Appeals may review both questions of fact and law.**

On appeal in bankruptcy proceedings, Circuit Court of Appeals may review both questions of fact and law.

**4. Bankruptcy ⬳446—On petition to revise, courts may review questions of law only.**

On petition to revise, court may review questions of law only, and may not review facts except as necessary to ascertain whether order is wholly unsupported by evidence, contrary to law, a mistake, or generally for any reason for which evidence may be viewed on writ of error.

**5. Bankruptcy ⬳446 — Whether bankrupts' bank balance should include checks deposited after banking hours on that day held question of law reviewable by petition to revise.**

Whether bankrupts' deposit, in their bank account after banking hours, of checks received from claimant for purchase of stock, should be included in balance of their account for that day for purpose of determining whether fund was depleted, was question of law reviewable by petition to revise.

**6. Banks and banking ⬳121—"Deposit slip" defined.**

"Deposit slip" is acknowledgment that amount named therein has been received by bank; it is receipt intended to furnish evidence as between depositor and depositary that on given date there was deposited sum named therein, time of deposit, and amount deposited.

[Ed. Note.—For other definitions, see Words and Phrases, Deposit Slip.]

**7. Banks and banking ⬳121—Issuance of deposit slip admits relation of debtor and creditor for amount stated therein.**

Issuance of deposit slip is admission by bank that relation of debtor and creditor has

been created as to amount stated therein, and creation of that relationship does not depend on whether bank's agent, whose duty it is to do so, thereafter enters deposit in depositor's account, but rights of parties must be determined by real state of accounts.

**8. Banks and banking ⬳121 — Bank clerk whose duty it is to enter deposits is agent of bank, and not of depositor.**

Bank clerk whose duty it is to enter deposits is agent of bank, and not of depositor.

**9. Banks and banking ⬳121—Rule that banks close at 3 o'clock does not prevent receipt or payment of money after that hour, nor affect legal relations of parties.**

Rule that banks close at 3 o'clock is merely regulation for convenience of bank; and does not prevent receipt or payment of money after that hour, nor affect legal relations of parties if money is received or paid out, though transaction does not appear on books of bank until subsequent day.

**10. Banks and banking ⬳126—Crediting of checks indicates that bank receives checks deposited as cash.**

Intention of parties as to effect of deposit controls, and presentation of deposit slip with cash and checks for deposit in general account, and crediting thereof to depositor's account, indicates intention of parties that bank receives checks as cash, in absence of contrary recital.

**11. Banks and banking ⬳119—In New York, deposit of checks or drafts in ordinary course transfers title and creates relation of debtor and creditor.**

In New York, deposit in ordinary course of business of money, or drafts, or checks received and credited as money, vests title thereto in bank and creates relation of debtor and creditor.

**12. Banks and banking ⬳154(6)—Burden is not on depositor to show when bank entered deposits on its books.**

Burden is not on depositor to show when bank entered deposit on its books, since it is receipt of deposit, and not time of its entry, which binds bank.

**13. Banks and banking ⬳121—In construing deposit slips, court may consider practical interpretation given thereto by parties.**

In construing deposit slips, court may consider practical interpretation given thereto by parties before any controversy arose.

**14. Banks and banking ⬳126—Bank's entry of deposit and depositor's withdrawals held to show that checks were received as cash.**

Bank's entry of deposit of checks, made after banking hours, and depositor's checking out amount in excess of his credit balance if deposit had not been counted as cash, held to show that parties regarded deposit as cash.

**15. Bankruptcy ⬳140(3)—Title to claimant's checks deposited by bankrupts after banking hours vested in bank on day of receipt of checks.**

Where bankrupts, after banking hours, deposited checks received from claimant for stock

to be purchased for claimant, *held*, in tracing fund on bankrupts' failure to carry out their fiduciary obligation to purchase stock, that title to checks vested in bank on date of deposit, and not on following day when checks were entered.

Petition to Revise Order of the District Court of the United States for the Southern District of New York.

In the matter of Samuel S. Ruskay and others, individually and as copartners trading as S. S. Ruskay & Co., bankrupts. On petition of Robert Crellin to revise the order of the District Court denying priority of petitioner's claim. Reversed, with directions.

Patterson, Eagle, Greenough & Day, of New York City (Carroll G. Walter and J. Rhodes O'Reilly, both of New York City, of counsel), for petitioner.

Zalkin & Cohen, of New York City (S. Marshall Kronheimer, of New York City, of counsel), for trustee-respondent.

Before ROGERS, HOUGH, and HAND, Circuit Judges.

ROGERS, Circuit Judge. This is a petition to revise an order made on June 11, 1924, in a proceeding in bankruptcy.

The petitioner seeks to recover the amount of two checks given by him to the bankrupts —one a check for $620, the other for $1,167.25. They were given for the purchase of 15 shares of American Telephone & Telegraph Company stock, which shares the bankrupts agreed to purchase for the petitioner, but which they never delivered to him if, indeed, they ever at any time purchased them. These checks, it appears, the bankrupts deposited in the Old Colony Trust Company on February 21, 1922, after banking hours, although they were actually not credited on the books of the trust company in the bankrupts' checking account until February 23d, the next banking day.

It is claimed by the petitioner that he has traced these checks into the bankrupts' account and that he is entitled to recover the amount from the receiver of the bankrupts, who was appointed on February 23d; there being a credit on the books of the trust company in favor of the bankrupts in excess of the amount of his claim.

The court below, confirming the report of the special master to whom the claim was referred, has denied the petitioner's right on the ground that the trust fund had been wholly dissipated prior to the appointment of the receiver and so never reached the latter's hands.

[1] There can be no doubt that when the petitioner paid money to the bankrupts for the purchase of the stock they occupied a fiduciary relation to him and held the money so received solely for the purchase of the stock. Equity regards a fund so paid and received as impressed with a trust in favor of the one who paid it over and who is beneficially entitled. The latter may assert his right against those to whom he intrusted it, or any one claiming under them voluntarily or with notice. Keech v. Sanford, 1 White & Tudor, Lead. Cas. (6th Ed.) 53, and notes. And see In re See, 209 F. 172, 126 C. C. A. 120; In re A. Bolognesi & Co., 254 F. 770, 166 C. C. A. 216. But a trust fund can be followed and recovered only when it can be clearly traced and identified in some certain or specific fund or property.

The petitioner failed below because in the opinion of the court he did not succeed in tracing the trust fund into the hands of the receiver of the bankrupts, it not having been made to appear to that court's satisfaction that the money was in the bankrupts' account in the trust company at the time of the receiver's appointment.

It appears that an order was entered in the District Court on May 29, 1922, requiring all creditors of the alleged bankrupts to file proofs of claim on or before July 29, 1922, or be forever barred from asserting any claim against the receiver. It referred all claims so filed to a special master with power to hear and determine them and to report his determination to the court.

Pursuant to this order, the petitioner herein filed his proof of claim on June 6, 1922. In his sworn statement he set forth that on February 17, 1922, he instructed the alleged bankrupts to purchase for his account 15 shares of stock of the American Telephone & Telegraph Company at the price of $119 a share. That he was advised by them on the same day that the stock had been purchased for his account, and that the amount due for the same was $1,787.25. That thereafter and on February 20, 1922, he delivered at the office of the bankrupts in payment of the amount due for the stock, and upon the understanding that he would receive therefor certificates representing the said stock, two checks—one for $1,167.25 and one for $620, the total of the two checks being the amount of the purchase price of the stock. That, upon information and belief, each of said checks was indorsed by the bankrupts for collection in their account in the Old Colony Trust Company of Boston, Mass., on February 21, 1922, and the amount of the checks

credited by the trust company aforesaid to the account of the bankrupts; said checks being paid by the respective banks upon which they were drawn.

The claimant further stated that he had never received from the bankrupts certificates for the shares of stock so purchased by them for him. He further stated upon information and belief that at all times, until the appointment of the receiver, the moneys paid to the alleged bankrupts by him remained on deposit to the credit of the said bankrupts in the Trust Company and came into the possession of the receiver herein. He therefore claimed that of the cash balance on deposit to the credit of the bankrupts in the trust company the sum of $1,787.25 is money belonging to him held for him in trust by the bankrupts, and he claimed that specific amount of money out of said balance.

At the hearing before the special master the following testimony was introduced:

"Q. I ask you to look at this transcript, Claimant's Exhibit 3; will you tell us what the balance to the credit of S. S. Ruskay & Co. was on the 20th day of February, 1922? A. $9,705.90 at the close of business.

"Q. Can you tell us what the withdrawals were on the 21st? A. On the 21st the withdrawals amounted to $3,901.27.

"Q. That left a balance of how much? A. $5,803.63, the deposits on the 21st were $1,483.86, leaving a credit at the close of the 21st of $7,288.49, and the withdrawals on February 23d were $8,601.50.

"Q. Now, you have got the transaction as between February 20th and 23d? A. Yes, sir.

"Q. And you say on the 23d of February the withdrawals from this account were in the sum of $8,601.50? A. Yes.

"Q. What does this Exhibit No. 3 show in respect to the deposits on the 23d? A. On the 23d three deposits made one for $1,149.29, one for $3,585, one for $30.

"Q. What does it show about the withdrawals on the 23d? A. $8,601.50."

The master found that on February 21, 1922, the bankrupts had on deposit in the trust company $7,288.49; that February 22d was a legal holiday and on that day the petition in involuntary bankruptcy was filed; that on February 23d there was withdrawn $8,601.50; that the withdrawals were in excess of the deposit on February 21, 1922, amounting to $7,288.49; that by reason of the withdrawals the deposit of February 21, 1922, was wholly dissipated. Then he found:

"That some time during the day of February 23, 1922, the time not being shown, and no evidence being adduced on the part of the claimant to indicate just when additional moneys were deposited with the bankrupts, there was deposited a further sum of $4,764.29, leaving a balance at the close of February 23, 1922, in the sum of $3,451.28."

He added:

"I find that the trust fund of said claimant has been wholly dissipated and the mingled fund wholly depleted and cannot be treated as reappearing in sums subsequently deposited to the credit of the same account. The bankrupts being stockbrokers, the funds on deposit were constantly fluctuating, and there is no period at which one can state definitely just what specific funds were on deposit nor whether or not the trust funds of the claimant remained intact at any particular time with the bankrupts; this burden rested upon the claimant, and it was part of his case to establish said fact affirmatively.

"I find that claimant has not borne the burden of proof; that he has not traced the trust funds into any specific fund; and that the proceeds of said claimant's checks did not come into the hands of the trustee, but, on the contrary, were dissipated prior to the time of the filing of the petition in bankruptcy, even though subsequent deposits caused the balance that came into the hands of the trustees or receiver to be in excess of the amount claimed by claimant."

[2] If the above findings of fact stood alone, the conclusion reached was correct as a matter of law. For the rule is now well established, and is not here controverted, that where one has deposited trust funds in his individual bank account and the mingled fund is at any time wholly depleted, the trust fund is thereby dissipated and cannot be treated as reappearing in sums subsequently deposited to the credit of the same account. Schuyler v. Littlefield, 232 U. S. 707, 710, 34 S. Ct. 466, 58 L. Ed. 806; Peters v. Bain, 133 U. S. 671, 693, 10 S. Ct. 354, 33 L. Ed. 696; Knatchbull v. Hallett, L. R. 13 Ch. Div. 696.

But the difficulty in this case is that the master found certain other facts. He stated:

"I find that the 15 shares of American Tel. & Tel. stock never came into the possession of the receiver; that the sum of $1,787.25 was paid by the claimant to the Boston office of the bankrupt as per two checks deposited with the bankrupts on the 20th day of February, 1922, one in the sum of $620 and the other in the sum of $1,167.25."

He misapprehended the legal effect of that finding, in that he states that the excess of the deposits on February 21, 1922, amounted to $7,288.49, ignoring the actual deposit on that day of $1,787.25 because of the fact that it was received after banking hours and was not actually entered in the bankrupt's account until some time on the next banking day. And then he finds that on February 23d, which was the next banking day, there was withdrawn $8,601.50 which exhausted what he treats as the balance in the account on the prior day. But if the $1,787.25 is in law to be regarded as held by the bank on February 21st for the bankrupts and added to their account as of the date when it was actually received, the withdrawals at no time exceeded the deposits. In other words, the master in effect held that the bank became a debtor, not from the time it received the deposit, but from the time it was actually entered on the books. And he accordingly reported adversely upon the petitioner's claim. He recommended that the claimant's demand and petition be dismissed, and that he be remitted as a general creditor to the general fund. He applied the doctrine that a dissipated trust fund cannot be treated as reappearing in sums subsequently deposited to the credit of the same and remitted the petitioner to the position of a general creditor against the general fund.

[3-5] The petitioner excepted to the master's report, and the District Judge overruled the exceptions and confirmed the report. And the case was brought here on petition to review, and that is the proper remedy in such a case. See Collier on Bankruptcy (13th Ed.) p. 838.

The remedy by petition to revise and that by appeal differ as respects the power of the court to grant relief. On an appeal this court may review both questions of fact and law. Citizens' Loan & Trust Co. v. Eberhart (C. C. A.) 298 F. 291; In re Western Rope & Mfg. Co. (C. C. A.) 298 F. 926; Stalcup v. Jepson (C. C. A.) 289 F. 479; In re Patterson-MacDonald Shipbuilding Co. (C. C. A.) 288 F. 546; Ross v. Stroh, 165 F. 628, 91 C. C. A. 616; Hatch v. Curtin, 154 F. 791, 83 C. C. A. 495; Rush v. Lake, 122 F. 561, 58 C. C. A. 447. But on a petition to revise, the jurisdiction of the Circuit Courts of Appeals extends only to matters of law. In re Iroquois Utilities (C. C. A.) 297 F. 397; In re Laureate Co. (C. C. A.) 294 F. 668; Mohler v. Norris, (C. C. A.) 291 F. 571; Gadd v. Dawson (C. C. A.) 291 F. 327; In re B. & R. Clove Corp. (C. C. A.) 279 F. 372; In re Nagel

(C. C. A.) 278 F. 105; In re Donnelly, 187 F. 121, 109 C. C. A. 39; In re Stewart, 179 F. 222, 102 C. C. A. 348. While this has been said again and again in this and the other circuits, and is the general rule, we do not understand that we are under no circumstances to look into the record at the evidence upon which the findings of fact rest. We think the rule is correctly stated in Collier on Bankruptcy (13th Ed.) vol. 1, p. 832. It is there said:

"*Questions of Law Only Considered.*—The court on a petition to revise, as distinguished from an appeal in bankruptcy, does not determine the facts on conflicting affidavits or testimony, but takes the facts as found by the District Court and inquires solely into questions of law. * * * It was intended by conferring this power of revision to provide a summary method for revising orders and decisions of courts of bankruptcy upon questions of law, and the section does not contemplate any review of facts, except as may be necessary to ascertain whether the order is wholly unsupported by the evidence, is contrary to law, a clear mistake, or generally for any reason for which evidence may be viewed on writ of error."

In re Hoyne, 277 F. 668, the Circuit Court of Appeals in the Seventh Circuit has recently held that on a petition to review only questions of law can be considered. But it added that the question whether the report of a master was wholly unsupported by testimony is one of law and so reviewable on a petition to revise. And in Good v. Kane, 211 F. 956, 128 C. C. A. 454, the Circuit Court of Appeals in the Eighth Circuit held that on a petition to revise it is a question of law whether or not there is any substantial evidence to sustain a decision or order in bankruptcy. And see Kirsner v. Taliaferro, 202 F. 51, 56, 120 C. C. A. 305; In re Frank, 182 F. 794, 797, 105 C. C. A. 226; In re Lee, 182 F. 579, 581, 105 C. C. A. 117.

We have no doubt that upon the facts in this case it is a question of law whether on February 21, 1922, the trust company had in the bankrupts' account a balance of $7,288.49, or whether there should be added to that amount the sum of $1,787.25 which was received by the bank on that day after banking hours, although not actually credited in the account until the next banking day. If that amount is entitled to be credited on the day it was received, the bankrupts' credit on that day was $9,075.74. In passing on that question we are not passing on a question of conflicting evidence, for there is no conflict in the evidence. It is undisputed

that the deposit was made as stated and that the credit was not actually given to the bankrupts on the books until the following day.

That the deposits were made on February 21st and after banking hours appears from the deposit slips which are in evidence. Two of these slips appear in the margin.[1] The other differs in the amount of the deposit, being for $30 and in the exact time of the deposit, which is stated as "PM 3 13."

It is admitted that the items entered on these slips were not included in the credit balance of the day on which they were made because the deposits were received after banking hours. That seems to have been the sole reason for their omission.

[6, 7] Deposit slips are an acknowledgment that the amount of money named therein has been received by the bank which gives them. They are receipts and intended to furnish evidence as between depositor and depositary that on a given date there was deposited the sum named therein. They furnish evidence as to the time of deposit and the amount deposited. First National Bank v. Clark, 134 N. Y. 368, 372, 32 N. E. 38, 17 L. R. A. 580. The issuance of a deposit slip by the bank constitutes an admission by the bank that the relation of debtor and creditor has been created between the parties as to the amount stated therein. The creation

of that relationship does not depend upon whether the agent of the bank, whose duty it is to do so, thereafter enters the deposit in the account of the depositor.

[8] The bank clerk, whose duty it is to make the entry, is not the agent of the depositor but the agent of the bank. Mechanics', etc., Bank v. Smith, 19 Johns. (N. Y.), 115. The rights of the parties must be determined by the real state of the accounts and not by the entries actually made or negligently omitted to be made. See First National Bank of Washington v. Whitman, 94 U. S. 343, 346, 24 L. Ed. 229. Mistakes in bank accounts are not uncommon. They preclude no one from ascertaining the truth and claiming its benefit.

[9] The rule that banks close at 3 o'clock in the afternoon is merely a regulation for the convenience of the bank and does not prevent the receipt or payment of money after that hour, nor does it affect the legal relations of the parties to the transaction if the money is received or paid out as the case may be, although the transaction does not regularly appear on the books of the bank until a subsequent day.

In Butler v. Broadway Savings Institution, 171 App. Div. 682, 157 N. Y. S. 532, the bank had a by-law which provided that "the bank shall be open for business daily from 10 o'clock a. m. to 3 o'clock p. m." It appeared, however, that the bank was accustomed to open at 9 o'clock. The plaintiff did not know of this custom and relied on the by-law. She bought certain stock and gave in payment a draft on the bank. This draft was presented to the bank the morning after the sale at 9:30 and was paid, and the amount entered in the plaintiff's passbook which had been left with the bank according to her custom. The plaintiff in the meantime had repented of her bargain and went to the bank on the same morning for the purpose of intercepting payment. When she arrived there at 9:40 she was informed the draft had been paid. It claimed that the payment was valid. The court sustained the bank's contention and said:

"We have not been supplied with a precedent and we have been unable to find one. The rule quoted does not expressly prohibit the payment of a draft without fixed hours. The rule is merely a regulation for the convenience of the bank. There is no evidence that in its terms it was designed to afford special protection to the depositors."

And in the case now under consideration we think that the rule that a bank closes at 3 o'clock does not prohibit a bank from re-

---

[1] Old Colony Trust Company. Deposit to Credit of S. S. Ruskay & Co.

Boston, Mass., Feb. 21, 1922.

| | Dollars | Cents |
|---|---|---|
| Bills | 548 | |
| Specie | | |
| Checks 5–20 | 524 | 29 |
| 5–124 | 50 | |
| 5–13 | 9 | 50 |
| 1–2 | 17 | 50 |
| | 1,149 | 29 |

Early Money
1922 Feb. 21 PM 3 12
W. I. McI.
HI–Feb. 23

Old Colony Trust Company. Deposit to Credit of S. S. Ruskay & Co.

Boston, Mass., Feb. 21, 1922.

| | Dollars | Cents |
|---|---|---|
| Bills | 135 | |
| Specie | | |
| Checks | 100 | |
| | 2,500 | |
| | 150 | |
| | 100 | |
| | 600 | |
| | 3,585 | |

1922 Feb. 21 PM 3 13
W. I. McI.
L–2 Feb. 23

ceiving a deposit of money or the equivalent of money (checks and drafts) after 3 o'clock. And if it does so receive a deposit the amount so received creates the relation of creditor and debtor as effectively as though the deposit was actually received before 3 o'clock whether the entry actually appears on the books of the bank on the day when it was received or whether the actual entry is postponed until the next day.

[10] The intent of the parties governs. And· in Morse on Banking (5th Ed.) vol. 2, p. 235, it is said that a credit on the deposit ticket is as significant an act of receiving the check as cash as is a credit on the passbook or the books of the bank. In King v. Bowling Green Trust Co., 145 App. Div. 398, 129 N. Y. S. 977, it was held that when a deposit slip contains the statement that the bank in receiving deposits assumes no responsibility for the failure of its collecting agents, and that it shall only be liable when the proceeds in actual funds shall have come into its possession, the deposit slip must be read into the contract, and the title to the check is not transferred. But the deposit slips used in the case now before us contained no statement whatever limiting the bank's responsibility or indicating in any way that the checks were not received as so much cash.

It does not appear what words, if any, passed between the parties to the transaction at the time the deposits were made. But we are entitled to consider the conduct of the parties. And it was not necessary for the depositor to say to the cashier or bank's agent, "Credit my account with these checks," and for the bank's representative to say, "We will do so.'" They could adopt a mode of intercourse which indicated their intentions without any spoken words. The presentation of a deposit slip or slips for so much in cash and so much in checks indicating that the whole was to be placed to the general account of the depositor, and the subsequent crediting of the whole to the depositor's general account, indicates as intelligibly as words could have done just what the parties intended. If either party had not intended such a result, but wished the bank simply to act as agent for collection, a different course would have been pursued.

As was said in Noble v. Doughten, 72 Kan. 336, 344, 83 P. 1048, 1051 (3 L. R. A. [N. S.] 1167):

· "If the depositor had desired to establish the relation of principal and agent between himself and the depositary he should have

indorsed the paper for collection merely, or otherwise should have indicated his purpose; and if the bank did not intend to accept the check as money it should have entered it as paper and not as cash, or otherwise should have made manifest its intention to collect merely."

The deposit of a check or bill in the ordinary course of business, the depositor receiving a credit against which he can draw, has the effect of transferring the title in the check or bill to the bank. Briggs v. Central National Bank of New York, 89 N. Y. 182, 42 Am. Rep. 285; Metropolitan National Bank v. Lloyd, 90 N. Y. 530; Cragie v. Hadley, 99 N. Y. 131, 1 N. E. 537, 52 Am. Rep. 9.

The law on this subject was stated in Burton v. United States, 196 U. S. 283, 297, 25 S. Ct. 243, 245 (49 L. Ed. 482), where it was said:

"There was no oral or special agreement made between the defendant and the bank at the time when any one of the checks was deposited and credit given for the amount thereof. The defendant had an account with the bank, took each check when it arrived, went to the bank, indorsed the check·which was payable to his order, and the bank took the check, placed the amount thereof to the credit of the defendant's account, and nothing further was said in regard to the matter.· In other words, it was the ordinary case of the transfer or sale of the check by the defendant and the purchase of it by the bank, and upon its delivery to the bank, under the circumstances stated, the title to the check passed to the bank and it became the owner thereof. It was in no sense the agent of the defendant for the purpose of collecting the amount of the check from the trust company upon which it was drawn. From the time of the delivery of the check by the defendant to the bank it became the owner of the check; it could have torn it up or thrown it in the fire or made any other use or disposition of it which it chose, and no right of defendant would have been infringed."

So in Metropolitan National Bank v. Loyd, 90 N. .Y. 530, 535, the court said:

"It is true no express agreement was made transferring the check for so much money, but it was delivered to the bank and accepted by it, and the bank gave Murray credit for the amount, and he accepted it. That was enough. The property in the check passed from Murray and vested in the bank. He was entitled to draw the money so credited to him, for as to it the relation of debtor and creditor was formed, and the right of

Murray to command payment at once was of the very nature and essence of the transaction. On the other hand, the bank, as owner of the check, could confer a perfect title upon its transferee, and, therefore, when by its directions the plaintiff received, and gave credit for it upon account, it became its owner and entitled to the money which it represented. The check, therefore, for every purpose material upon this inquiry, as between these parties was money."

The Supreme Court of Minnesota, in Re State Bank, 56 Minn. 119, 123, 57 N. W. 336, 45 Am. St. Rep. 454, stated the law as follows:

"There is no question but that the general rule is that, upon a deposit being made by a customer in a bank, in the ordinary course of business, of money, drafts or other negotiable paper, received and credited as money, the title vests in the bank, and the money, drafts or other paper immediately becomes the property of the bank; and the bank becomes debtor of the depositor for the amount."

In a case decided in 1886 in the Circuit Court for the Southern District of New York (St. Louis & S. F. Ry. Co. v. Johnston, 27 F. 243), Judge Wallace declared that, "When a sight bill is deposited with a bank by a customer at the same time with money or currency, and a credit is given him by the bank for the paper just as a like credit is given for the rest of the deposit, the act evinces unequivocally the intention of the bank to treat the bill and the money or currency, without discrimination, as a deposit of cash, and to assume towards the depositor the relation of a debtor instead of a bailee of the paper. If the customer assents to such action on the part of the bank by drawing checks against the credit, or in any other way, he manifests with equal clearness his intention to be treated as a depositor of money, and, as such, as a creditor of the bank instead of a bailor of the paper. Under such circumstances it should be held that the bank acquires title to the paper just as it would to a deposit of money."

And the Circuit Court of Appeals for the Eight Circuit has held, in Security National Bank v. Old National Bank, 241 F. 1, 8, 134 C. C. A. 1, that a customer of a bank, who deposits checks or drafts upon other banks with his bank, which gives him credit therefor in his general account, which is subject to check, thereby transfers the title of the checks or drafts to the bank, and renders it his debtor to the amount credited to him

therefor in the absence of an agreement to the contrary.

The simple deposit of money on a checking account in a bank transfers the ownership of the money to the bank. In legal effect it is a loan by the customer to the bank. As was said in Bank of the Republic v. Millard, 77 U. S. (10 Wall.) 152, 155 (19 L. Ed. 897):

"It is no longer an open question in this court * * * that the relation of banker and customer, in their pecuniary dealings, is that of debtor and creditor. It is an important part of the business of banking to receive deposits, but when they are received, unless there are stipulations to the contrary, they belong to the bank, become part of its general funds, and can be loaned by it as other moneys."

So where a check or draft, due at the time, is indorsed and deposited in a bank and is accepted as cash, it at once becomes the property of the bank and the bank becomes the debtor of the depositor in the amount of the check so deposited with the superadded obligation that the money is to be paid when demanded by check. Marine Bank v. Fulton Bank, 69 U. S. (2 Wall.) 252, 17 L. Ed. 785; Thompson v. Riggs, 72 U. S. (5 Wall.) 663, 678, 18 L. Ed. 704; Scammon v. Kimball, 92 U. S. 362, 369, 370, 23 L. Ed. 483; National Bank v. Burkhardt, 100 U. S. 686, 691, 25 L. Ed. 766; Davis v. Elmira Savings Bank, 161 U. S. 275, 288, 16 S. Ct. 502, 40 L. Ed. 700; Burton v. United States, 196 U. S. 283, 302, 303, 25 S. Ct. 243, 49 L. Ed. 482; Newmark Grain Co. v. Merchants' National Bank, 166 Cal. 203, 135 P. 958; Higgins v. Hayden, 53 Neb. 61, 73 N. W. 280; Scott v. W. H. McIntyre Co., 93 Kan. 508, 144 P. 1002, L. R. A. 1915D, 139; Aebi v. Evansville Bank, 124 Wis. 73, 102 N. W. 329, 68 L. R. A. 964, 109 Am. St. Rep. 925; Wasson v. Lamb, 120 Ind. 514, 22 N. E. 729, 6 L. R. A. 191, 16 Am. St. Rep. 342; Spooner v. Donalsonville Bank, 142 Ga. 236, 82 S. E. 625. The deposit of money by a customer to his credit in a drawing account, without more, creates between the bank and the customer the relation of debtor and creditor, not of agent and principal. Taft v. Quinsigamond National Bank, 172 Mass. 363, 365, 52 N. E. 387; Carr v. National Security Bank, 107 Mass. 45, 9 Am. Dec. 6. And in the Taft Case the court said:

"Usually the cases in which a bank is held to have been only an agent for collection have as a controlling element evidence of usage, or notice, or particular agreement.

In the present case there was no evidence of usage or custom, nor was it shown that the defendant informed its customers by notices upon its pass-books or deposit slips, or otherwise, that it accepted deposits of commercial paper only as an agent for collection. Nor was it shown either that such was its general arrangement with the plaintiff, or that he understood that it was the arrangement ordinarily made by the defendant with its depositors."

[11] In New York it is not open to question that if a deposit is made by a customer in a bank in the ordinary course of business either of money, or drafts or checks received and credited as money, the title to the money, or to the drafts or checks, is immediately vested in and becomes the property of the bank, and the relation of debtor and creditor is established. Cragie v. Hadley, 99 N. Y. 133, 1 N. E. 537, 52 Am. Dec. 9.

The order of the court below rested upon St. Louis & San Francisco Ry. Co. v. Johnston, 133 U. S. 566, 10 S. Ct. 390, 33 L. Ed. 683. It was the only case which the court mentioned. That was a case in which a customer deposited on May 5th with a bank in New York a sight draft on a railway company in Boston. That bank sent the draft to a bank in Boston for collection, and on May 6th the Boston bank presented the draft to the drawee, who paid it by a check on another bank in Boston which was presented to and paid by the latter bank on May 7th. It appeared that the bank in New York in which the depositor had deposited the original draft, which it sent forward to Boston for collection, was hopelessly insolvent, to the knowledge of its officers, when it received the draft, and had been for several days prior thereto, and that it had closed its doors before the draft was paid and never reopened them. It also appeared that although the depositor's bank book was with the New York bank at the time the deposit was received, no entry was made in it at the time of the deposit. The Supreme Court in its opinion stated:

"In five years of business between them, the San Francisco Company had never drawn against such paper. The evidence of the bank's clerks leaves no doubt that, as to out-of-town drafts for large amounts, the bank kept track of them and reserved the right to to charge exchange and also interest for the average time taken in collection, notwithstanding its agreement to pay interest on the daily balances. This was not consistent with the theory of an understanding between the bank and the company that the title to this and similar drafts should pass absolutely to the bank."

And it held that the depositor was entitled to reclaim the proceeds of the deposit. The case is authority for the proposition that when a bank is hopelessly insolvent, and known by its president to be so, it is a fraud for it to receive deposits of checks from an innocent depositor ignorant of its condition and he is entitled to reclaim them or their proceeds. It is to be observed that this case was not one where a check had been drawn on another bank, but a sight draft drawn on a railroad company, and the Supreme Court in its opinion comments on the distinction which exists in such cases between checks and drafts. And the court also attached importance to the fact that in its course of dealing with the bank, extending over a period of five years, the depositor had never drawn against paper so deposited by it. That indicated distinctly that the depositor understood that the draft was deposited for collection and not as cash. We are unable to see that the decision in that case justifies the conclusion reached in the court below. The two cases are plainly distinguishable in their facts.

[12] The special master thought the burden was on the depositor to show at what time on February 23d the entry on the books was actually made. This was error. The rights of the depositor do not depend upon the time when the bank's clerk enters a deposit or whether he enters it at all. The clerk making the entry not being his agent, if he does not perform his duty the bank is responsible therefor, and the rights of the depositor are not thereby curtailed. It is the receipt of the deposit, and not the entry, which binds the bank. Dixon v. Jackson, 149 Mo. App. 585, 129 S. W. 481. If the deposit was actually made on February 21st, the fact that it was accepted a few minutes after banking hours does not alter the obligation the bank assumed to the depositors. That obligation is no different from what it would have been if the deposit had been made a few minutes before 3 o'clock. And if we are wrong in holding that the entry on the books should have been made as of the day the deposit was received, about which, however, we entertain no doubt, we think it must be conceded that the entry should have been made on or before the hour when the bank next opened its doors and permitted withdrawals to be made. But we repeat it is the receipt of the deposit, and not its entry on the books, which makes the depositor a creditor and the bank a debtor.

[13, 14] The entry on the books is, however, significant of the intent with which the trust company received the checks when the deposit was made. For the practical interpretation given to the deposit slips by the parties themselves, before any controversy arose, is the best indication as to what they intended and understood the transaction meant. That the practical interpretation given by the parties to an agreement while they are engaged in the performance of it may be considered by the courts is a well-established principle of law. In Chicago v. Sheldon, 9 Wall. 50, 54, 19 L. Ed. 594, the court declared that, "In cases where the language used by the parties to the contract is indefinite or ambiguous, and, hence, of doubtful construction, the practical interpretation by the parties themselves is entitled to great, if not controlling, influence, * * * in an executory contract, and where its execution necessarily involves a practical construction, if the minds of both parties concur, there can be no great danger in the adoption of it by the court as the true one." And see Topliff v. Topliff, 122 U. S. 121, 7 S. Ct. 1057, 30 L. Ed. 1110; Davis v. North Bank Dock Co. (D. C.) 294 F. 336; Missouri Pacific R. Co. v. Holt (C. C. A.) 293 F. 155, 162; Indian Territory Illuminating Oil Co. v. Bartlesville Zinc Co. (C. C. A.) 288 F. 273, 276; Fitzgerald v. First National Bank, 114 F. 474, 478, 52 C. C. A. 276. The entry made on the first banking day after the deposit shows that the trust company received the deposits as so much cash, and the checks made by the depositors, and which were in excess of their balance if these deposits had not been counted as cash, show they understood that the total amount of the deposit was regarded as so much cash to their credit.

[15] This court is satisfied that as matter of law when the checks were deposited by the bankrupts with the Old Colony Trust Company, although received after banking hours, the checks became at once the property of the trust company and that company the debtor of the bankrupts in the amount thereof from the time it received the checks; it sufficiently appearing that such was the intention of both parties. The intention was shown by the deposit slips, by the crediting of the amount in the bankrupts' account on the next banking day, and by the checks drawn on their account by the bankrupts which would have been in excess of their credits if the checks had not been received as cash and the fact that there is no evidence indicating a contrary understanding on the part of either of the parties to the transaction.

The undisputed evidence shows as matter of law that the $1,787.25 paid to the bankrupts by the petitioner was paid for a specific purpose, was received by them for the use and benefit of the petitioner, was actually in the possession of the trust company at the time of the appointment of the receiver of the bankrupts, and actually came into his hands. The petitioner is therefore entitled to reclaim it.

The order is reversed, with costs, and the District Court is directed to allow the claim.